IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-421

 Filed: 6 June 2017

Wake County, No. 14CRS21583

STATE OF NORTH CAROLINA

 v.

JUSTIN DEANDRE BASS

 Appeal by defendant from judgment entered 19 December 2014 by Judge Paul

C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 4

October 2016.

 Attorney General Roy Cooper, by Special Deputy Attorney General Harriet F.
 Worley, for the State.

 Lisa Miles for defendant-appellant.

 TYSON, Judge.

 Justin Deandre Bass (“Defendant”) appeals from his jury conviction of assault

with a deadly weapon inflicting serious injury. We find reversible errors in the trial

and grant Defendant a new trial.

 I. Background

 A. Previous Altercation

 1. Fogg’s Version
 STATE V. BASS

 Opinion of the Court

 Defendant and Jerome Fogg engaged in an altercation on the evening of 23

June 2014, at the Bay Tree Apartments in Raleigh, where Defendant lived with his

mother. Fogg claimed Defendant had kept “running his mouth,” looking at Fogg, who

weighed 240 pounds at the time, and saying “that big s**t don’t matter.” According

to Fogg, Defendant claimed to a member of the Piru gang, as was Fogg, but Defendant

was unable to replicate the gang’s handshake.

 Fogg testified Defendant continued to be “disrespectful to [Fogg].” Fogg told

him to stop talking, at which point Defendant “pulled his pants up, had his hands

up.” Fogg believed this action meant Defendant was going to hit him or was getting

ready to fight. Fogg threw the first punch and hit Defendant several times.

 2. Defendant’s Version

 Defendant also testified about the 23 June 2014 altercation. He testified Fogg

approached and asked whether Defendant knew the Piru handshake. Fogg became

aggressive and left when Defendant told him that he did not know the handshake.

Fogg returned and was “ready to do that handshake.” Fogg began punching

Defendant repeatedly, after Defendant did not perform the handshake to Fogg’s

satisfaction.

 A video of this assault was recorded on Fogg’s cellphone, and was played for

the jury. Fogg first punched Defendant in the nose. Fogg then dealt a blow to

Defendant’s left jaw from behind, which knocked Defendant to the ground.

 -2-
 STATE V. BASS

 Opinion of the Court

Defendant stood and tried to walk away. Fogg dealt a third blow to Defendant’s right

jaw, which caused Defendant, who weighed 165 pounds, to “fly through the air and

roll.” The video shows Defendant walking in circles with Fogg following behind him.

Defendant did not swing at Fogg or say anything to provoke him. Fogg broke

Defendant’s jaw in three places, which required surgery and the placement of screws

to repair. Defendant’s jaw was wired shut.

 Defendant did not contact police after this incident because he was afraid Fogg

would return and beat him again. He testified he began carrying a 9mm handgun

out of fear of further bodily injury or death by Fogg.

 B. Defendant Shoots Fogg

 1. Fogg’s Version

 Fogg testified he encountered Defendant at the Bay Tree apartment complex

two weeks after the first altercation, on 3 July 2014. Fogg testified Defendant stated

to Fogg, “he was going to pop [Fogg’s] motherf***ing ass.” Defendant was walking

away from Fogg, and then stopped and said something else. Fogg could see something

in Defendant’s pocket, but he “[had never] ran from anyone,” and was “not going to

start running.” Fogg testified Defendant pulled a gun from his pocket and shot him.

Fogg stated, “You shot me motherf***er.” Defendant shot Fogg again twice.

 2. Defendant’s Version

 -3-
 STATE V. BASS

 Opinion of the Court

 Defendant testified he was watching fireworks with friends outside of his home

at the Bay Tree apartment complex. His jaw remained wired shut from the beatings

and injuries dealt by Fogg two weeks earlier. Defendant returned to building 114,

where he lived on the second floor with his mother, and stood outside that building

with friends for a couple of hours. Defendant was standing on the sidewalk between

buildings 114 and 118, when he saw a car pull into the parking lot. He saw Fogg was

seated in the passenger’s seat. Defendant stated he crossed the street and walked

toward building 109 in order to put as much distance as possible between Fogg and

himself. Defendant remained in the breezeway of building 109, pacing back and forth

and “praying and hoping” that Fogg would not approach him.

 Defendant saw Fogg speaking with a group of people at building 110. Fogg

then began walking towards Defendant. Fogg approached Defendant in an

aggressive manner, and stated, “I heard you been talking junk . . . I hope you enjoy

drinking the Ensure for six weeks.” Defendant observed Fogg carrying a “large knife

with a big handle” in a sheath attached to his pants. Defendant believed Fogg “either

was going [t]o beat me up or try to cut me with the knife.”

 Defendant moved to the grassy area outside the breezeway because he did not

want to get trapped with Fogg inside the breezeway. Fogg stated, “I said get on the

concrete.” Defendant did not move. Fogg questioned, “oh you ain’t going to move?”

Defendant pulled his gun and pointed it at Fogg. He testified he intended to scare

 -4-
 STATE V. BASS

 Opinion of the Court

Fogg and hoped he would leave. Fogg stated, “oh . . . you wanna shoot me?” Fogg

approached Defendant, while reaching for his knife. Defendant shot Fogg, panicked,

and ran. Defendant testified he shot Fogg because he was “scared for [his] life.”

 The large knife Fogg carried that evening is included in the record on appeal.

It resembles a short machete, with a wide and curved blade that is approximately ten

inches long. The knife was found in its sheath located on Fogg’s hip when a police

officer arrived to assist Fogg.

 After shooting Fogg, Defendant ran from the apartment complex and left town

for Virginia for two weeks. Defendant was arrested upon his return home.

 Dr. Matthew Alleman, a general surgeon who treated Fogg at the hospital, was

initially concerned that Fogg might die due to the severity of his injuries. Fogg

underwent multiple surgeries. He remained in the intensive care unit for

approximately a month and spent an additional one or two weeks as an inpatient.

 On 24 October 2014, Defendant gave the State notice that he intended to assert

self-defense. On 18 November 2014, Defendant was indicted in a superseding

indictment for attempted murder and assault with a deadly weapon with intent to

kill inflicting serious injury. Defendant’s trial commenced on 10 December 2014.

 On 19 December 2014, the jury found Defendant was not guilty of attempted

first-degree murder or assault with a deadly weapon with intent to kill inflicting

serious injury, but found Defendant was guilty of assault with a deadly weapon

 -5-
 STATE V. BASS

 Opinion of the Court

inflicting serious injury. Defendant was sentenced to a minimum term of thirty

months and a maximum term of forty-eight months in prison. Defendant appeals.

 II. Jurisdiction

 Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) and

15A-1444(a) (2015).

 III. Issues

 Defendant argues the trial court erred by: (1) failing to instruct the jury that

Defendant had no duty to retreat before using deadly force in self-defense, and

committed further error by instructing the jury that the law pertaining to whether

Defendant had a duty to retreat “does not apply to this case;” (2) sustaining the

State’s objections to evidence of specific acts of violence committed by Fogg upon other

individuals; and (3) denying Defendant’s motion to continue prior to the start of trial.

 IV. Jury Instructions

 Defendant argues the trial court erred failing to instruct the jury that he had

no duty to retreat before using deadly force in self-defense, and later instructing the

jury that the law pertaining to whether Defendant had no duty to retreat “does not

apply to this case.” We agree.

 A. Standard of Review

 -6-
 STATE V. BASS

 Opinion of the Court

 The question of whether a trial court erred in instructing the jury is a question

of law reviewed de novo. State v. Osorio, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149

(2009).

 B. Statutory Circumstances which Justify Use of Deadly Force

 “Our courts have recognized that a defendant may use either deadly force or

nondeadly force to defend himself, depending on the circumstances of each case.”

State v. Whetstone, 212 N.C. App. 551, 558, 711 S.E.2d 778, 783 (2011). “Deadly force

is ‘force intended or likely to cause death or great bodily harm[,]’ and nondeadly force

is ‘force neither intended nor likely to do so[.]’” Id. (quoting State v. Pearson, 288 N.C.

34, 39, 215 S.E.2d 598, 602 (1975)). Defendant does not dispute he used deadly force

against Fogg.

 Our statutes set forth the two circumstances in which a person is justified in

using deadly force to be excused from criminal liability. N.C. Gen. Stat. § 14-51.3 is

titled, “Use of force in defense of person; relief from criminal or civil liability,” and

provides:

 (a) . . . [A] person is justified in the use of deadly force and
 does not have a duty to retreat in any place he or she has
 the lawful right to be if either of the following applies:

 (1) He or she reasonably believes that such force is
 necessary to prevent imminent death or great
 bodily harm to himself or herself or another.

 (2) Under the circumstances permitted pursuant to
 G.S. 14-51.2.

 -7-
 STATE V. BASS

 Opinion of the Court

N.C. Gen. Stat. § 14-51.3(a) (2015) (emphasis supplied).

 N.C. Gen. Stat. § 14-51.2 provides:

 (b) The lawful occupant of a home, motor vehicle, or
 workplace is presumed to have held a reasonable fear of
 imminent death or serious bodily harm to himself or herself
 or another when using defensive force that is intended or
 likely to cause death or serious bodily harm to another if
 both of the following apply:

 (1) The person against whom the defensive force
 was used was in the process of unlawfully and
 forcefully entering, or had unlawfully and forcibly
 entered, a home, motor vehicle, or workplace, or if
 that person had removed or was attempting to
 remove another against that person’s will from the
 home, motor vehicle, or workplace.

 (2) The person who uses defensive force knew or had
 reason to believe that an unlawful and forcible entry
 or unlawful and forcible act was occurring or had
 occurred.

 . . . .

 (f) A lawful occupant within his or her home, motor vehicle,
 or workplace does not have a duty to retreat from an
 intruder in the circumstances described in this section.

N.C. Gen. Stat. § 14-51.2(b) and (f) (2015) (emphasis supplied).

 A person who claims self-defense clearly does not have a duty to retreat under

either of the two circumstances set forth in § 14-51.3(a)(1) or § 14-51.2(b). In both

circumstances, the person who uses defensive deadly force must have held a

 -8-
 STATE V. BASS

 Opinion of the Court

reasonable belief that the force used was necessary to prevent imminent death or

great bodily harm to himself or another.

 The pertinent distinction between the two statutes is that a rebuttable

presumption arises that the lawful occupant of a home, motor vehicle, or workplace

holds a reasonable fear of imminent death or serious bodily harm to himself or

another when using defensive force at those locations under the circumstances set

forth in N.C. Gen. Stat. § 14-51.2(b). Id. This rebuttable presumption does not arise

in N.C. Gen. Stat. § 14-51.3(a)(1).

 C. Charge Conference and Preservation of Error

 At the charge conference with counsel, the trial court listed the pattern jury

instructions the court intended to give the jury. Included in this list was North

Carolina Pattern Jury Instruction (“N.C.P.I.”) 308.45. That instruction states, in

pertinent part:

 If the State has satisfied you beyond a reasonable doubt
 that the defendant assaulted the victim with deadly force
 (insert other lesser included assault offenses), then you
 would consider whether the defendant’s actions are
 excused and the defendant is not guilty because the
 defendant acted in self-defense. The State has the burden
 of proving from the evidence beyond a reasonable doubt
 that the defendant’s action was not in self-defense.

 If the circumstances would have created a reasonable belief
 in the mind of a person of ordinary firmness that the
 assault was necessary or appeared to be necessary to
 protect that person from imminent death or great bodily
 harm, and the circumstances did create such belief in the

 -9-
 STATE V. BASS

 Opinion of the Court

 defendant’s mind at the time the defendant acted, such
 assault would be justified by self-defense. You, the jury,
 determine the reasonableness of the defendant’s belief
 from the circumstances appearing to the defendant at the
 time. Furthermore, the defendant has no duty to retreat in
 a place where the defendant has a lawful right to be. (The
 defendant would have a lawful right to be in the
 defendant’s [home] [own premises] [place of residence]
 [workplace] [motor vehicle].)

 NOTE WELL: The preceding parenthetical should only be
 given where the place involved was the defendant’s [home]
 [own premises] [place of residence] [workplace] [motor
 vehicle].

N.C.P.I. Crim. 308.45 (2016) (emphases supplied).

 N.C.P.I. 308.45 encompasses both of the circumstances set forth in N.C. Gen.

Stat. § 14-51.3(a), where the defendant is justified in using deadly force and has no

duty to retreat. N.C.P.I. 308.45 contains a separate “Note Well” instruction, which

directs the trial court to use N.C.P.I. 308.80 (“Defense of Habitation”), if the assault

occurred in the defendant’s home, workplace or motor vehicle under N.C. Gen. Stat.

§ 14-51.2(b). N.C.P.I. 308.80 sets forth the statutory and rebuttable presumption that

the lawful occupant of a home, motor vehicle, or workplace holds a reasonable fear of

imminent death or serious bodily harm to himself or another when using defensive

force at any of those listed places. N.C.P.I. Crim. 308.80 (2016); see N.C. Gen. Stat. §

14-51.2(b).

 Defense counsel later requested the court “add the language from the pattern

308.45 which reads furthermore, the Defendant has no duty to retreat in a place

 - 10 -
 STATE V. BASS

 Opinion of the Court

where the Defendant has a lawful right to be. And the Defendant would have a lawful

right to be in his place of residence.” Counsel then argues whether Defendant was

standing within the curtilage of his home when he shot Fogg. The trial court

determined Defendant was not within the curtilage of his home, and told defense

counsel, “I will not include that sentence that you asked for. I don’t think that it

applies in this case.”

 The trial court instructed the jury:

 If the State has satisfied you beyond a reasonable doubt
 that the Defendant assaulted the victim with deadly force,
 then you would consider whether the Defendant’s actions
 are excused and the Defendant is not guilty because the
 Defendant acted in self defense. The State has the burden
 of proving from the evidence beyond a reasonable doubt
 that the Defendant’s action was not in self defense.

 If the circumstances would have created a reasonable belief
 in the mind of a person of ordinary firmness that the
 assault was necessary or appeared to be necessary to
 protect that person from imminent death or great bodily
 harm, and the circumstances did create such a belief in the
 Defendant’s mind at the time the Defendant acted, such an
 assault would be justified by self defense. You, the jury,
 determine the reasonableness of the Defendant’s belief
 from the circumstances appearing to the Defendant at the
 time.

 These instructions fail to include the following sentence from N.C.P.I. 308.45,

which is required under both circumstances set forth in §§ 14-51.3(a)(1)-(2) and 14-

51.2(b), and states: “Furthermore, the defendant has no duty to retreat in a place

where the defendant has a lawful right to be.” N.C.P.I. Crim. 308.45. It appears the

 - 11 -
 STATE V. BASS

 Opinion of the Court

trial court was under the erroneous impression that the “no duty to retreat” language

only applies when the defendant acts in and asserts self-defense while in his home,

workplace or motor vehicle pursuant to N.C. Gen. Stat. § 14-51.2(b). While ample

evidence was presented to warrant the instruction that Defendant acted in self-

defense when he shot Fogg, the jury was not instructed that Defendant was under no

duty to retreat under the circumstances presented here.

 D. Jury’s Confusion over Duty to Retreat

 During deliberations, the jury sent a note to the court, which asked for “further

explanation on NC law with regard to ‘duty to retreat.’” The trial court instructed

the jury:

 The second question is you asked for further explanation
 on North Carolina law with regard to quote, duty to retreat.
 The answer I can give you is that by North Carolina
 statute, a person has no duty to retreat in one’s home, one’s
 own premises, one’s place of residence, one’s workplace, or
 one’s motor vehicle. This law does not apply in this case.
 (emphasis supplied)

 This instruction was clearly contrary to law. Not only did the initial

instructions fail to inform the jury that Defendant statutorily had no duty to retreat

under the circumstances set forth in N.C. Gen. Stat. § 14-51.3(a)(1), the further

instruction stated the “no duty to retreat” statute “does not apply,” and may have

required the jury to conclude Defendant would have had a duty to retreat under the

circumstances to avoid criminal liability.

 - 12 -
 STATE V. BASS

 Opinion of the Court

 E. Prejudice

 Defendant argues this error was prejudicial because he was entitled to an

instruction that he had no duty to retreat because he was in a “place he . . . ha[d] the

lawful right to be,” see N.C. Gen. Stat. § 14-51.3(a), namely, the grounds of the

apartment complex where he lived. Defendant further asserts the record shows it is

readily apparent that the jury was confused.

 When determining whether a defendant is entitled to an instruction on self-

defense, courts must “consider the evidence in the light most favorable to [the]

defendant.” State v. Withers, 179 N.C. App. 249, 257, 633 S.E.2d 863, 868 (2006)

(citation omitted). “It is the duty of the trial court to instruct the jury on all

substantial features of a case raised by the evidence.” State v. Shaw, 322 N.C. 797,

803, 370 S.E.2d 546, 549 (1988).

 This Court has held in many cases that where
 competent evidence of self-defense is presented at trial, the
 defendant is entitled to an instruction on this defense, as it
 is a substantial and essential feature of the case, and the
 trial judge must give the instruction even absent any
 specific request by the defendant. It has also been held that
 where supported by the evidence in a claim of self-defense,
 an instruction negating defendant’s duty to retreat in his
 home or premises must be given even in the absence of a
 request by defendant.

State v. Morgan, 315 N.C. 626, 643, 340 S.E.2d 84, 95 (1986) (internal citations

omitted) (second and third emphases supplied); see also State v. Davis, 177 N.C. App.

98, 102, 627 S.E.2d 474, 477 (2006) (“A comprehensive self-defense instruction

 - 13 -
 STATE V. BASS

 Opinion of the Court

requires instructions that a defendant is under no duty to retreat if the facts warrant

it[.]”).

 In State v. Holloman, __ N.C. App. __, 786 S.E.2d 334, disc. review allowed, __

N.C. __, 794 S.E.2d 317 (2016), the trial court, inter alia, “omitt[ed] a key phrase” and

further “compounded its error in reordering a significant portion of the self-defense

instruction” in a manner which led this Court to hold that “there [was] a reasonable

possibility that, had the jury been properly instructed on self-defense, jurors would

not have convicted Defendant of assault.” Id. at ___, 786 S.E.2d at 333-34.

 Here, the trial court also omitted a key and required phrase from the pattern

instructions regarding self-defense, that “the defendant has no duty to retreat in a

place where the defendant has a lawful right to be.” N.C.P.I. 308.45; N.C. Gen. Stat.

§ 14-51.3(a)(1). The trial court similarly confused the jury by responding to the jury’s

inquiry and instructing: “[B]y North Carolina statute, a person has no duty to retreat

in one’s home, one’s own premises, one’s place of residence, one’s workplace, or one’s

motor vehicle. This law does not apply in this case.” (emphasis supplied).

 The court erroneously instructed the jury on both occasions. Under N.C. Gen.

Stat. § 14-51.3, “[t]he right not to retreat applies anywhere a person has a lawful right

to be, such as a public place; the statute does not require that the person be within a

home, workplace, or motor vehicle.” John Rubin, The New Law of Self-Defense? The

 - 14 -
 STATE V. BASS

 Opinion of the Court

Impact of Statutory Changes in 2011 (School of Government, University of North

Carolina at Chapel Hill § V(B) (rev. May 30, 2012)) (emphasis supplied).

 Furthermore, the record on appeal contains an unsigned letter written by one

of the jurors. The juror wrote to the trial judge after deliberations had begun and

expressed his or her concern that Defendant would not receive a fair verdict due to

the “bullying and bias that was present in the jury deliberation room.” The juror

explained that other jurors were discussing the “stand your ground laws” in other

states “as examples of reasons we should think one way or another.” The juror’s letter

also described the bargaining that was occurring in the jury room. Statements were

made in the jury room that “they are all thugs . . . so we will HAVE to convict on

something,” and “we don’t have to agree but will need to compromise on a guilty

verdict of some kind.” This letter serves to further demonstrate the erroneous jury

instruction prejudiced Defendant.

 The trial court’s jury instructions on Defendant’s duty to retreat were an

inaccurate and misleading statement of the statutes and case law. Defendant has

shown “a reasonable possibility that, had the error in question not been committed,

a different result would have been reached.” N.C. Gen. Stat. § 15A-1443(a) (2015);

see, e.g., State v. Ramos, 363 N.C. 352, 355-56, 678 S.E.2d 224, 227 (2009) (“reasonable

possibility” of “different result” standard applied to determine that jury instruction

 - 15 -
 STATE V. BASS

 Opinion of the Court

was prejudicial and thus reversible). Defendant is entitled to a new trial with proper

instructions on self-defense and no duty to retreat.

 F. State v. Lee not Precedent

 The dissenting opinion recognizes that the trial court misapprehended the law

pertaining to the duty to retreat and that the instruction to the jury was contrary to

law, but holds this Court is bound by this Court’s opinion in State v. Lee, __ N.C. App.

__, 789 S.E.2d 679 (2016), disc. review allowed, __ N.C. __, 797 S.E.2d 301 (2017).

 In Lee, the jury was instructed pursuant to N.C.P.I. 206.10, as agreed upon by

the parties, that the defendant “would be not guilty of any murder or manslaughter

if [he] acted in self-defense and . . . was not the aggressor in provoking the fight and

did not use excessive force under the circumstances.” Id. at __, 797 S.E.2d at 685.

Like in this case, the court omitted the sentence from the N.C.P.I., which states,

“[f]urthermore, the defendant has no duty to retreat in a place where the defendant

has a lawful right to be.” Id. at __, 789 S.E.2d at __.

 Unlike the present case, the defendant in Lee did not object to the jury

instruction and failed to argue to the trial court that the defendant had no duty to

retreat. On appeal, the defendant argued the trial court committed plain error by

omitting the sentence that the defendant “has no duty to retreat in a place where the

defendant has a lawful right to be,” and also argued the trial court was required to

give N.C.P.I. 380.10 (defense of home, workplace, motor vehicle).

 - 16 -
 STATE V. BASS

 Opinion of the Court

 The Court in Lee recognized N.C. Gen. Stat. § 14-51.3(a)(1), and explained “the

right to stand one’s ground in ‘any public place’ [under § 14-51.3(a)(1)], is conditioned

as an initial matter upon whether the defender was justified in the use of self-defense

without regard to the physical setting in which the confrontation occurred.” Id. at __,

789 S.E.2d at 686. The Court recognized that the “statutory presumption of

reasonableness remains limited to the use of defensive (including deadly) force in

defending one’s home, motor vehicle, or workplace.” Id. at __, 789 S.E.2d at 686.

 This Court held, “[b]ecause Defendant was not within his home or premises,

motor vehicle, or workplace, any right to ‘stand his ground’ stemmed from the two

above-described elements of self-defense, and Defendant received instructions to that

effect.” Id. at __, 789 S.E.2d at 686. The Court further stated, “Where the evidence is

such that a jury could reasonably find a defender was justified in the use of self-

defense in any other setting, a no duty to retreat instruction does not change the

analysis.” Id. at __, 789 S.E.2d at 687.

 Here, unlike in Lee, the record shows Defendant was entitled to the self-

defense instruction and the jury was clearly concerned with whether Defendant had

a duty to retreat from Fogg prior to using deadly force. Defense counsel specifically

requested a no duty to retreat instruction. The trial court initially gave an incomplete

instruction under both N.C. Gen. Stat. §§ 14-51.3(a)(1) and 14-51.2(b).

 - 17 -
 STATE V. BASS

 Opinion of the Court

 When the jury sought clarification on any duty to retreat by Defendant, the

trial court improperly instructed the jury that the law regarding no duty to retreat

“does not apply in this case.” The erroneous omission from the initial instruction

followed by the misstatement of the law in the later instruction could have unfairly

required the jury to conclude Defendant had a duty to retreat from Fogg. State v. Lee

does not control the outcome of this case and Defendant’s right to a new trial is not

circumscribed by its holding.

 V. Evidence of Fogg’s Violent Conduct

 Defendant also argues he is entitled to a new trial, because the trial court erred

by excluding the testimonies of three character witnesses pertaining to Fogg’s past

specific instances of violent conduct, and denied his motion to continue when the

State produced character evidence pertaining to Fogg’s violence the night before trial.

We agree.

 A. Standard of Review

 This Court reviews the trial court’s rulings on evidentiary issues for an abuse

of discretion. State v. Gettys, __ N.C. App. __, __, 777 S.E.2d 351, 355 (2015).

 “[I]n criminal cases, . . . [w]here a motion to continue is based on a right

guaranteed by the federal or state constitutions, . . . the ruling of the court is one of

law and not of discretion and is reviewable [de novo] on appeal.” State v. Moore, 39

N.C. App. 642, 643, 251 S.E.2d 647, 649 (1979) (citation omitted).

 - 18 -
 STATE V. BASS

 Opinion of the Court

 B. Exclusion of Fogg’s Specific Acts of Violence

 One of several witnesses was prepared to testify to Fogg’s specific acts of

violence, that Fogg had put a gun to her head, choked her, and threatened to kill her

in front of her three-year-old daughter. Fogg also beat her so badly she had blood in

her hair, could not stand, and her eyes were swollen shut. Fogg’s violence also left his

shoe print in the flesh of her back.

 Another witness, who was a complete stranger to Fogg, was prepared to testify

Fogg encountered him on the street and beat him unconscious. A third witness was

prepared to testify Fogg punched Fogg’s dog in the face repeatedly when the dog paid

attention to the witness. Fogg later threatened that witness’s wife and punched the

witness when he questioned Fogg about the threat.

 The trial court excluded these specific instances of violent conduct, and allowed

testimony from the above witnesses that each witness had the “opinion” that Fogg

was an aggressive and violent person, and that Fogg had a “reputation” for being

aggressive and violent.

 “A defendant claiming self-defense may present evidence of the victim’s

character which tends to show (1) the victim was the aggressor, or (2) the defendant

had a reasonable apprehension of death or bodily harm, or both.” State v. Brown, 120

N.C. App. 276, 277, 462 S.E.2d 655, 656 (1995) (citing State v. Corn, 307 N.C. 79, 85,

296 S.E.2d 261, 266 (1982)), disc. review denied, 342 N.C. 896, 467 S.E.2d 906 (1996).

 - 19 -
 STATE V. BASS

 Opinion of the Court

“In cases in which character or a trait of character of a person is an essential element

of a charge, claim, or defense, proof may also be made of specific instances of his

conduct.” N.C. Gen. Stat. § 8C-1, Rule 405(b) (2015) (emphasis supplied). “[E]vidence

of specific instances of a victim’s character, known or unknown to the defendant at

the time of the crime, may be relevant in establishing that the victim was the

aggressor when defendant claims self-defense.” State v. Ray, 125 N.C. App. 721, 726,

482 S.E.2d 755, 758 (1997) (citation and quotation marks omitted) (emphasis

supplied).

 Whether Defendant was the aggressor is an element of self-defense. See State

v. Norris, 303 N.C. 526, 530, 279 S.E.2d 570, 572 (1981) (setting forth the elements

of self-defense, which includes the element that “defendant was not the aggressor in

bringing on the affray, i. e., he did not aggressively and willingly enter into the fight

without legal excuse or provocation”).

 Under the plain language of Rule 405(b), Defendant was entitled to present

evidence of specific acts of Fogg’s violent conduct to show that Fogg, not Defendant,

was the aggressor at the time of the assault. N.C. Gen. Stat. § 8C-1, Rule 405(b). This

right applies whether Fogg’s specific instances of conduct were known or unknown to

Defendant at the time of the assault, because the evidence pertains and applies to

whether Fogg was the aggressor. State v. Watson, 338 N.C. 168, 187, 449 S.E.2d 694,

 - 20 -
 STATE V. BASS

 Opinion of the Court

706 (1994) (overruled on other grounds by State v. Richardson, 341 N.C. 585, 461

S.E.2d 724 (1995)).

 The excluded testimonies of these three witnesses tends to show Fogg had a

history not only of violence, but of explosive, unprovoked, and irrational violence,

even with strangers. The jury’s verdict concluded Defendant had no intent to kill

Fogg under two separate charges when he shot him several times.

 As shown by the unsigned letter provided to the court during deliberations, the

jury heard a juror’s impression that there was little difference in the aggressiveness

of Fogg and Defendant: “they are all thugs...we will HAVE to convict on something.”

The trial court erred by limiting the witnesses’ testimonies to exclude specific

instances of Fogg’s violent conduct, where this evidence was admissible under Rule

405(b) and offered by Defendant to show Fogg was the aggressor in the second

altercation at issue here.

 The exclusion of evidence of the specific acts of violence by Fogg was prejudicial

under N.C. Gen. Stat. § 15A-1443(a), which states in pertinent part:

 A defendant is prejudiced by errors relating to rights
 arising other than under the Constitution of the United
 States when there is a reasonable possibility that, had the
 error in question not been committed, a different result
 would have been reached at the trial out of which the
 appeal arises. The burden of showing such prejudice under
 this subsection is upon the defendant.

 - 21 -
 STATE V. BASS

 Opinion of the Court

(emphasis supplied). Defendant was denied his Constitutional right to present a

complete defense. U.S. Const. Amend. VI; Const. of N.C. Art. I, §§ 18, 23; see Holmes

v. South Carolina, 547 U.S. 319, 164 L.E.2d 503 (2006).

 The State has not shown the error was harmless beyond a reasonable doubt.

N.C. Gen. Stat. § 15A-1443(b) (2015) (“A violation of the defendant’s rights under the

Constitution of the United States is prejudicial unless the appellate court finds that

it was harmless beyond a reasonable doubt. The burden is upon the State to

demonstrate, beyond a reasonable doubt, that the error was harmless.”) Defendant

is entitled to a new trial based upon the suppression and prohibition of this testimony

before the jury.

 B. Denial of Defendant’s Motion to Continue

 In a related argument, Defendant asserts the trial court erroneously denied

his motion to continue, after the prosecutor provided defense counsel with other

reports of Fogg’s assaultive behavior on the evening prior to trial. Even if defense

counsel had been provided ample opportunity to investigate these reports, in light of

the rulings above, it appears the trial court would have improperly excluded any

testimony about specific instances of Fogg’s aggressive and assaultive conduct to

show he was the aggressor.

 The trial court committed prejudicial error by limiting the character witnesses’

testimonies solely to opinion and reputation evidence. Defendant should have been

 - 22 -
 STATE V. BASS

 Opinion of the Court

permitted adequate time to investigate these additional instances of Fogg’s violent

and explosive conduct in order to adequately prepare his defense.

 Defendant was deprived of an opportunity to “make effective use of the

evidence” by the trial court’s exclusion of the testimony about Fogg’s specific acts of

violence, and the trial court’s denial of his motion to continue. State v. Canady, 355

N.C. 242, 252, 559 S.E.2d 762, 767 (2002).

 Evidence of Fogg’s aggressive, explosive, and violent nature was crucial

substantive evidence to support Defendant’s claim of self-defense. Failure to allow

counsel any time to investigate after the State’s disclosures, provided the night before

trial, further violated Defendant’s rights to effective assistance of counsel and to

present a complete defense. U.S. Const. Amend. VI; Const. of N.C. Art. I, §§ 18, 23.

 VI. Conclusion

 Whether or not Defendant was within the curtilage of his home where the

shooting occurred, he was certainly within the common areas of the apartment

complex where he lived. It is undisputed that Defendant was in a place where he had

a lawful right to be when he shot Fogg. It is also undisputed Defendant made

reasonable efforts to avoid further confrontation with the armed Fogg. Evidence was

introduced to show Defendant was in imminent fear of his life, based upon the

merciless beating Fogg had inflicted upon him two weeks prior.

 - 23 -
 STATE V. BASS

 Opinion of the Court

 To be entitled to a “no duty to retreat” instruction, Defendant need only present

evidence that he “reasonably believe[d] that such force [was] necessary to prevent

imminent death or great bodily harm to himself . . . .” under N.C. Gen. Stat. § 14-

51.3(a)(1). The initial jury instructions failed to include the statutory and required

“no duty to retreat” instruction. The jury requested further instruction on the law

pertaining to “no duty to retreat,” and was erroneously instructed that the law

pertaining to “’no duty to retreat’ does not apply in this case.” The prejudice to

Defendant is clear from the record.

 The excluded instances of Fogg’s violent conduct were also crucial to

Defendant’s claim of self-defense and are admissible under Rule 405(b). The trial

court committed prejudicial error by excluding this evidence, and hindered

Defendant’s right to present a complete defense. Defendant was further prejudiced

by the denial of his motion to continue, where the State presented defense counsel on

the eve of trial with additional information regarding specific instances of Fogg’s

violent conduct.

 Defendant is entitled to a new trial with the opportunity conduct a complete

investigation and present evidence of specific instances of Fogg’s violent and

aggressive nature, and proper instructions to the jury on self-defense and no duty to

retreat. It is so ordered.

 NEW TRIAL.

 - 24 -
 STATE V. BASS

 Opinion of the Court

Judge CALABRIA concurs.

Judge BRYANT dissents by separate opinion.

 -2-
 No. COA16-421 – State v. Bass

 BRYANT, Judge, dissenting.

 Because In re Civil Penalty, 324 N.C. 373, 379 S.E.2d 30 (1989), requires that

we follow State v. Lee, ___ N.C. App. ___, 789 S.E.2d 679 (2016), review allowed, ___

N.C. ___, 796 S.E.2d 790 (2017), I believe that we are foreclosed from finding error in

(I) the trial court’s denial of defendant’s request for a no duty to retreat instruction.

While, candidly, I tend to agree with the majority’s opinion that a new trial is

necessary, I see no way in which to distinguish the facts in the instant case from those

in Lee and, therefore, disagree with the majority’s reasoning that Lee “is not

precedent here,” whether we agree with Lee’s legal soundness or not. See Petition for

Discretionary Review at 6, State v. Lee, ___ N.C. ___, 796 S.E.2d 790 (2017) (No.

335PA16) (“The opinion below is the first to construe N.C. Gen. Stat. § 14-51.3 (‘Use

of force in defense of person’), but it violates basic rules of statutory construction, and

relies heavily upon completely inapplicable provisions of § 14-51.2 (‘Home, workplace,

and motor vehicle protection’), which were not cited or argued by either party. All

branches of defensive force jurisprudence will be affected by this flawed Court of

Appeals opinion . . . .”).

 Furthermore, where (II) the trial court sustained the State’s objections to

evidence of specific instances of the victim’s violent conduct, but allowed ample

evidence of the victim’s reputation for violence, and where (III) the trial court’s denial

of defendant’s motion to continue does not rise to the level of a constitutional violation
 STATE V. BASS

 BRYANT, J., dissenting

of defendant’s right to present a defense, I would find no error in the judgment of the

trial court and respectfully dissent.

 I

 Defendant first argues the trial court erred by denying defendant’s request for

a pattern jury instruction that defendant could “stand his ground” and had no duty

to retreat before using deadly force in self-defense in a place defendant had a lawful

right to be. While the statute upon which defendant relies—N.C. Gen. Stat. 14-51.3

(2015)—states that “a person is justified in the use of deadly force and does not have

a duty to retreat in any place he or she has the lawful right to be,” I believe that we

are bound by this Court’s analysis in State v. Lee and its holding that “the statutory

presumption favoring a no duty to retreat instruction remains limited to one’s home,

motor vehicle, or workplace.” ___ N.C. App. at ___, 789 S.E.2d at 686.

 The question of whether a trial court erred in instructing the jury is a question

of law reviewed de novo. State v. Osorio, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149

(2009). “It is the duty of the trial court to instruct the jury on all substantial features

of a case raised by the evidence.” State v. Shaw, 322 N.C. 797, 803, 370 S.E.2d 546,

549 (1988) (citation omitted).

 “Where there is evidence that defendant acted in self-defense, the court must

charge on this aspect even though there is contradictory evidence by the State or

discrepancies in defendant’s evidence.” State v. Whetstone, 212 N.C. App. 551, 555,

 2
 STATE V. BASS

 BRYANT, J., dissenting

711 S.E.2d 778, 781 (2011) (citation omitted). Further, “where supported by the

evidence in a claim of self-defense, an instruction negating [a] defendant’s duty to

retreat in his home or premises must be given even in the absence of a request by

[the] defendant.” State v. Morgan, 315 N.C. 626, 643, 340 S.E.2d 84, 95 (1986)

(citations omitted); see also State v. Davis, 177 N.C. App. 98, 102, 627 S.E.2d 474, 477

(2006) (noting that “[a] comprehensive self-defense instruction requires instructions

that a defendant is under no duty to retreat if the facts warrant it”). “When

determining whether the evidence is sufficient to entitle a defendant to jury

instructions on a defense or mitigating factor, courts must consider the evidence in

the light most favorable to [the] defendant.” State v. Withers, 179 N.C. App. 249, 257,

633 S.E.2d 863, 868 (2006) (alteration in original) (quoting State v. Mash, 323 N.C.

339, 348, 372 S.E.2d 532, 537 (1988)).

 “Our courts have recognized that a defendant may use either deadly force or

nondeadly force to defend himself, depending on the circumstances of each case.”

Whetstone, 212 N.C. App. at 558, 711 S.E.2d at 783 (citation omitted). Where an

assault is made without the use of deadly force, “the person assaulted may not stand

his ground and kill his adversary, if there is any way of escape open to him, although

he is permitted to repel force by force and give blow for blow.” State v. Pearson, 288

N.C. 34, 39, 215 S.E.2d 598, 602–03 (975) (citations omitted).

 3
 STATE V. BASS

 BRYANT, J., dissenting

 “[H]owever, where the attack is made with murderous intent (i.e., deadly

force), the person attacked is under no obligation to retreat, but may stand his ground

and kill his adversary, if need be.” Id. at 39–40, 215 S.E.2d at 603 (citation omitted).

An assault is deadly or “felonious” if “it is done with the intent to kill or at least to

inflict serious bodily injuries . . . .” State v. Frizzelle, 243 N.C. 49, 50, 89 S.E.2d 725,

726 (1955). Thus, “deadly force is not privileged against nondeadly force” unless

“there is a great disparity in strength between the defendant and his assailant . . . .”

Pearson, 288 N.C. at 40, 215 S.E.2d at 603 (citations omitted). These common law

principles have been codified as follows:

 [A] person is justified in the use of deadly force and does
 not have a duty to retreat in any place he or she has the
 lawful right to be if either of the following applies:

 (1) He or she reasonably believes that such force is
 necessary to prevent imminent death or great bodily
 harm to himself or herself or another.

 (2) Under the circumstances permitted pursuant to G.S.
 14-51.2.

N.C.G.S. § 14-51.3(a) (emphasis added). Additionally, “[a] lawful occupant within his

or her home, motor vehicle, or workplace does not have a duty to retreat . . . .” N.C.

Gen. Stat. § 14-51.2(f) (2015). It is important to note, however, that when confronted

with an intruder, “[the] lawful occupant of a home, motor vehicle, or workplace is

presumed to have held a reasonable fear of imminent death or serious bodily harm . .

. when using defensive force . . . .” Id. § 14-51.2(b)(1)–(2). “[T]he determination by

 4
 STATE V. BASS

 BRYANT, J., dissenting

the trial court of which jury instruction is appropriate depends on the evidence in

each case.” Whetstone, 212 N.C. App. at 558, 711 S.E.2d at 783.

 Although this Court reviewed the defendant’s arguments for plain error in

State v. Lee, ___ N.C. App. at ___, 789 S.E.2d at 684, I believe that its analysis of

whether a no duty to retreat instruction was required controls our analysis in this

case. See generally In re Civil Penalty, 324 N.C. at 384, 379 S.E.2d at 37 (“Where a

panel of the Court of Appeals has decided the same issue, albeit in a different case, a

subsequent panel of the same court is bound by that precedent unless it has been

overturned by a higher court.” (citations omitted)).

 In Lee, the defendant’s friend (Walker) and the victim (Epps) engaged in an

argument near the defendant’s home. ___ N.C. App. at ___, 789 S.E.2d at 682. Epps,

who had a reputation as a troublemaker, left, but promised to return later and in fact

did, see Petition for Discretionary Review at 2, arriving in a car which parked two or

three houses down from the defendant’s home, id. at ___, 789 S.E.2d at 683. Epps

and several others got out of the car and approached the defendant and Walker, who

had seen Epps arrive in the car and had come out of the defendant’s house. Id.

Following a second argument, which quickly escalated, Epps shot Walker in the

street outside the defendant’s home and continued to shoot at him as Walker

attempted to flee. Id. Then, Epps turned his gun on the defendant, at which point

 5
 STATE V. BASS

 BRYANT, J., dissenting

the defendant shot Epps several times before Epps could fire. Id. Both Epps and

Walker died as a result of gunshot wounds. Id.

 The defendant in Lee was indicted for first-degree murder and was found guilty

of second-degree murder. Id. Although the defendant did not object at trial to the

self-defense jury instructions as given by the trial court, on appeal, the defendant

argued that a no duty to retreat instruction should have been given as he “was where

he had a right to be—the street by his home—when he was confronted by Epps, who

had a pistol in his hand and had just fatally wounded [Walker].” Id. at ___, 789 S.E.2d

at 685 (alteration in original). Specifically, the defendant in Lee

 argue[d] that, having undertaken to instruct the jury
 according to N.C.P.I.—Crim. 206.10, the trial court
 erroneously omitted the disputed sentence of the pattern
 jury instruction [(“Furthermore, the defendant has no duty
 to retreat in a place where the defendant has a lawful right
 to be.”)], and was further required to read N.C.P.I.—Crim.
 308.10 in its entirety.

Id.1 While it would seem that basic rules of statutory construction indicate that a no

duty to retreat instruction should have been given in Lee, see N.C.G.S. § 14-51.3;

 1 N.C.P.I 308.10 reads as follows:

 308.10 SELF-DEFENSE, RETREAT—INCLUDING HOMICIDE (TO
 BE USED FOLLOWING THE SELF-DEFENSE INSTRUCTIONS
 WHERE RETREAT IS IN ISSUE).

 NOTE WELL: This instruction is to be used if the
 evidence shows that the defendant was at a place where
 the defendant had a lawful right to be, including the
 defendant’s own home or premises, the defendant’s

 6
 STATE V. BASS

 BRYANT, J., dissenting

N.C.P.I.—Crim. 308.10, in reviewing for plain error, this Court nevertheless

disagreed:

 [The] Defendant’s argument, that a different verdict
 probably would have been reached but for the omission of
 a no duty to retreat jury instruction, presumes [the]
 Defendant was in a place where he had a lawful right to be,
 for purposes of a no duty to retreat defense, when he shot
 [the victim].

Id. (emphasis added).2 Indeed, this Court in Lee goes on to quote State v. Pearson,

288 N.C. 34, 215 S.E.2d 598 (1975), stating that “where the person attacked is not in

his own dwelling, home, place of business, or on his own premises, then the degree of

force he may employ in self-defense is conditioned by the type of force used by his

 place of residence, the defendant’s workplace, or in the
 defendant’s motor vehicle, when the assault on the
 defendant occurred.

 If the defendant was not the aggressor and the defendant was
 [in the defendant’s own home] [on the defendant’s own premises] [in
 the defendant’s place of residence] [at the defendant’s workplace] [in
 the defendant’s motor vehicle] [at a place the defendant had a lawful
 right to be], the defendant could stand his ground and repel force with
 force regardless of the character of the assault being made upon the
 defendant. However, the defendant would not be excused if the
 defendant used excessive force.

N.C.P.I.—Crim. 308.10 (June 2012) (second emphasis added) (footnote omitted).

 2 Incidentally, if the defendant in Lee was somehow not in a place where he had a lawful right
to be—the public street outside his home—I struggle to think of a place where he would have the
lawful right to be.

 7
 STATE V. BASS

 BRYANT, J., dissenting

assailant.” ___ N.C. App. at ___, 789 S.E.2d at 685 (emphasis added in Lee) (quoting

Pearson, 288 N.C. at 43, 215 S.E.2d at 605).3

 Ultimately, the Court in Lee concluded as follows:

 [T]o the extent [the] language [of N.C.G.S. § 14-51.3(a)(1)]
 can be characterized as extending the no duty to retreat
 defense to any public place, it is conditioned upon the
 reasonableness of a person’s belief that the use of deadly
 force was necessary under the circumstances. In other
 words, the right to stand one’s ground in “any public place”
 is conditioned as an initial matter upon whether the
 defender was justified in the use of self-defense without
 regard to the physical setting in which the confrontation
 occurred. This is consistent with case law predating
 N.C.G.S. § 14-51.3(a)(1), which the General Assembly
 enacted in 2011.

 ....

 The statutory reference to “any place [one] has a lawful
 right to be” does not change our essential analysis
 regarding Defendant’s duty to retreat, since the right to
 use self-defense is not limited spatially, and the statutory
 presumption favoring a no duty to retreat instruction
 remains limited to one’s home, motor vehicle, or workplace.

 ....

 3 Notably, however, Lee omits highly relevant language which immediately follows the passage
it quotes from Pearson:

 If the assailant uses nondeadly force, then generally deadly force
 cannot be used by the person attacked; provided there is no great
 disparity in strength, size, numbers, etc., between the person attacked
 and his assailant. However, if the assailant uses deadly force, then the
 person attacked may stand his ground and kill his attacker if he believes
 it to be necessary and he has a reasonable ground for such belief.

Pearson, 288 N.C. at 43, 215 S.E.2d at 605 (emphasis added).

 8
 STATE V. BASS

 BRYANT, J., dissenting

 Defendant was not entitled to a presumption that his use of
 deadly force was reasonable under the circumstances.
 There was no evidence that [the victim] ever entered
 Defendant’s home or yard. It is undisputed that when
 Defendant shot [the victim], Defendant was standing in the
 intersection of a public street several houses down from his
 residence, not within his home, motor vehicle, or
 workplace. Where the evidence is such that a jury could
 reasonably find a defender was justified in the use of self-
 defense in any other setting, a no duty to retreat
 instruction does not change the analysis. Accordingly, even
 considering the evidence in the light most favorable to
 Defendant, we are unable to conclude that, if the trial
 court’s instruction on self-defense had included a no duty
 to retreat instruction, Defendant “probably would not have
 been convicted of second-degree murder.”

Id. at ___, 789 S.E.2d at 686–87 (emphasis added) (citations omitted).

 Defendant in the instant case, similar to the defendant in Lee, contends that

N.C. Gen. Stat. § 14-51.3 applies to the facts of this case and that defendant is entitled

to an instruction that he had no duty to retreat because he was in a “place he . . .

ha[d] the lawful right to be,” see N.C.G.S. § 14-51.3(a), namely, the grounds of the

Bay Street Apartment complex where he lived with his mother. Further, defendant

contends the trial court improperly relied on N.C. Gen. Stat. § 14-51.2, and argues

this case is controlled by N.C. Gen. Stat. § 14-51.3.

 The evidence at trial tended to show as follows: About ten days prior to the

shooting, Fogg assaulted defendant in a parking area of the Bay Tree Apartments,

breaking defendant’s jaw, which required surgery and was thereafter wired shut.

 9
 STATE V. BASS

 BRYANT, J., dissenting

Fogg had a large knife on him the night of the assault. Following this assault, the

security guard for the apartment complex began trespass proceedings against Fogg

based on Fogg’s beating of defendant and another incident in which Fogg cut off a

cat’s head. Defendant also testified that after the assault he began carrying a gun

because he feared for his life and, further, that he became even more afraid of Fogg

when he learned that Fogg was a mixed martial arts fighter and boxer.

 The night of the shooting, defendant was heading to the breezeway of Building

114 where he lived with his mother. However, upon seeing Fogg arrive at the

apartment complex, defendant left the breezeway of his building, and started running

towards Building 109. Defendant testified he did so because he was afraid and

wanted to avoid encountering Fogg.

 But Fogg spotted defendant at Building 109 and started approaching him

using a loud aggressive voice and making hand motions. Defendant saw that Fogg

was again armed with a knife, and defendant testified he thought Fogg was going to

either beat him or cut him with the knife. Fogg threatened defendant, telling him he

had five minutes to get away, at which point defendant pulled his gun out and pointed

it at Fogg, hoping to scare Fogg into leaving. Defendant testified on direct as follows:

 Q. What did [Fogg] do after you pointed your gun at him?

 A. He said, excuse my language, he said, oh, n****r, you
 wanna shoot me?

 Q. Then what did he do?

 10
 STATE V. BASS

 BRYANT, J., dissenting

A. He started reaching for his knife. He started trying to
come towards me, that’s when I cocked my gun back and I
just started shooting.

Q. How many times did you shoot him?

A. I don’t know, because Mr. Fogg still coming towards me.
So I didn’t know if he was shot or not.

Q. When -- did there come a time in the shooting process
that you stopped?

A. Yes, sir it was.

Q. Why?

A. Because I seen Mr. Fogg grab his chest like that and he
started stumbling.

Q. And what did you do?

A. I panicked and ran.

Q. Before Mr. Fogg grabbed his chest, did you know if you
hit him in any of those prior shots?

A. No, sir, I did not.

Q. Did you ever see him fall?

A. No, sir, I did not.

Q. Why did you run from him?

A. Because I felt like it was -- that was the time for me that
I can get away from him.

Q. Before you pulled your gun, why didn’t you turn tail and
run?

 11
 STATE V. BASS

 BRYANT, J., dissenting

 A. Because I felt like if I would have turn my back against
 him, he would have came up from behind me and hit me in
 the jaw again.

 Q. Had he done that before?

 A. Yes, sir, he did.

 Defendant’s location on the grounds of the apartment complex where he lived

at the time of the shooting is not materially different from that of the defendant in

Lee, who was on a public street by his home. See ___ N.C. App. at ___, 789 S.E.2d at

687. Furthermore, at trial, defense counsel requested (but the trial court rejected 4)

pattern jury instruction 308.10,5 which this Court in Lee concluded was not

erroneously omitted from the jury instructions, despite the fact that the defendant in

 4 The following colloquy took place during the charge conference:

 [Defense Counsel]: Your Honor, I would object to the part of the charge
 where you say under North Carolina law and statutory definition, [the
 no duty to retreat rule] doesn’t apply to this case. Instead, I would ask
 this Court to give the pattern 308.10, that includes the parenthetical
 in a place the Defendant had a lawful right to be. Because I think that
 must be based on common law, state -- or state of the general common
 law. Otherwise it would make no sense to put it at the end of a
 parenthetical. If a pattern exists, I think [the] Court should just go
 with the pattern.

 THE COURT: But then I would still need to explain to them that I have
 determined as a matter of law none of those places apply in this case.

 [Defense Counsel]: Well, except the last one, at a place the Defendant
 had a lawful right to be.

 THE COURT: No, I’ve determined as a matter of law that that does not
 apply to this case.

 5 See supra note 1 and accompanying text.

 12
 STATE V. BASS

 BRYANT, J., dissenting

Lee was in a place he had the lawful right to be (the street outside his home) when he

met deadly force with deadly force, see id., which is precisely what happened in the

instant case.

 However, even if the facts in the instant case would have supported a no duty

to retreat instruction based on N.C.G.S. § 14-51.3(1), defendant’s argument that the

trial court improperly relied on N.C.G.S. § 14-51.2 by determining that the no duty

to retreat presumption applies solely to circumstances where a person is attacked in

his own home, business, or vehicle, must fail based on Lee.

 Accordingly, pursuant to this Court’s analysis and holding in Lee and the

requirement of In re Civil Penalty that “[w]here a panel of the Court of Appeals has

decided the same issue, . . . a subsequent panel of the same court is bound by that

precedent,” 324 N.C. at 384, 379 S.E.2d at 37, and I am unable to see a way to

distinguish this case from Lee, I would hold that this Court’s opinion in Lee forecloses

us from finding error in the trial court’s failure to instruct the jury that defendant

had no duty to retreat before using deadly force where he was in a place he had a

lawful right to be. I reluctantly dissent from this portion of the majority opinion.6

 II

 6 I would note that I write this dissent with the awareness that the N.C. Supreme Court has
allowed the defendant’s petition for discretionary review in State v. Lee, ___ N.C. App. ___, 789 S.E.2d
679 (2016), review allowed, ___ N.C. ___, 796 S.E.2d 790 (N.C. Mar. 16, 2017), and, assuming it
reverses the Court of Appeals’ opinion in Lee, I acknowledge that this portion of the dissent would be
moot.

 13
 STATE V. BASS

 BRYANT, J., dissenting

 The majority also agrees with defendant’s argument that the trial court erred

in sustaining the State’s objections to evidence of specific acts of violence committed

by the victim on other individuals and this constitutes reversible error as defendant

was prevented from exercising his constitutional right to present a complete defense.

According to the majority, defendant was entitled to present testimony of three

character witnesses regarding both defendant’s reputation for violence and also

specific acts of violent conduct committed by Fogg in order to show that Fogg, not

defendant, was the aggressor. I respectfully disagree.

 The majority otherwise sets forth the law regarding when a defendant claiming

self-defense can present evidence of the victim’s character. However, I would also

add that “[i]n self-defense cases, the character of the victim for violence is relevant

only as it bears upon the reasonableness of defendant’s apprehension and use of force,

which are essential elements of the defense of self-defense.” State v. Shoemaker, 80

N.C. App. 95, 101, 341 S.E.2d 603, 607 (1986) (citation omitted).

 In the instant case, defendant was allowed to present three witnesses who

testified that they knew Fogg and understood him to be violent and have a reputation

for violence and aggression. The witnesses, however, were prohibited from testifying

about specific prior acts of aggression committed by Fogg. Before allowing

defendant’s character witnesses to testify, the trial court ruled as follows: “[P]rior

acts of aggression are not an essential element of self defense. Aggressiveness on this

 14
 STATE V. BASS

 BRYANT, J., dissenting

occasion is an essential element, but prior acts of aggressiveness is [sic] circumstantial

evidence of aggressiveness on this occasion, it is not an essential element. And

therefore, it does not fall under 405[(b)].” Thus, where the trial court allowed the jury

to hear evidence of Fogg’s reputation for aggressiveness and violence from three

separate witnesses, I can discern no abuse of discretion in the trial court’s ruling that

the witnesses could not also testify about specific instances of Fogg’s violent or

aggressive conduct.

 Even assuming arguendo the trial court erred in this respect, defendant cannot

show that “had the error in question not been committed, a different result would

have been reached at the trial[,]” N.C. Gen. Stat. § 15A-1443(a) (2015), nor that the

error was not harmless beyond a reasonable doubt where, as here, a defendant claims

his constitutional rights have been violated, id. § 15A-1443(b) (“A violation of the

defendant’s rights under the Constitution of the United States is prejudicial unless

the appellate court finds that it was harmless beyond a reasonable doubt.”).

 During the trial, considerable evidence of Fogg’s aggressive and violent

behavior was heard by the jury, including the following: (1) the jury viewed a video

a total of three times which showed part of the incident on 23 June 2014 where Fogg

hit defendant several times, breaking his jaw in three places; (2) defendant testified

in detail about the violent nature of the fight he had with Fogg on 23 June 2014 and

the injuries he sustained as a result; (3) defendant’s counsel questioned Fogg at

 15
 STATE V. BASS

 BRYANT, J., dissenting

length on cross-examination about his criminal background, including Fogg’s

convictions for assault on a female, assault inflicting serious injury with a minor

present, felonious assault inflicting serious bodily injury, two counts of simple

assault, and assault inflicting serious injury; (4) defendant’s counsel questioned Fogg

about his training as a mixed martial arts fighter and boxer who sometimes fought

for money; (5) defendant was allowed to testify that he had heard Fogg had beaten

up other people; and (6) defendant presented testimony from three witnesses

regarding Fogg’s reputation for violence and aggression.

 Defendant was able to present ample evidence of Fogg’s reputation for violence

from which the jury could infer that Fogg was the aggressor on 4 July 2014.

Therefore, any error committed by the trial court in refusing to allow defendant’s

three witnesses to testify to specific instances of Fogg’s violent behavior in addition

to their testimony about his general reputation for violence, was not an abuse of

discretion. Furthermore, it did not negatively impact defendant’s ability to present

a complete defense and, as such, I believe it was harmless beyond a reasonable doubt.

 III

 The majority also holds that the trial court committed prejudicial error in

denying defendant’s motion to continue after defendant’s counsel received additional

information regarding Fogg’s violent and assaultive behavior the night before trial,

 16
 STATE V. BASS

 BRYANT, J., dissenting

and that such error violated defendant’s constitutional rights to effective assistance

of counsel and to present a defense. Again, I respectfully disagree.

 “Ordinarily, a motion to continue is addressed to the sound discretion of the

trial court, and absent a gross abuse of that discretion, the trial court’s ruling is not

subject to review.” State v. Taylor, 354 N.C. 28, 33, 550 S.E.2d 141, 146 (2001) (citing

State v. Searles, 304 N.C. 149, 153, 282 S.E.2d 430, 433 (1981)). However, “[a]

significant limitation on that discretion occurs where denial of a continuance results

in the violation of a defendant’s right to due process . . . .” State v. Roper, 328 N.C.

337, 349, 402 S.E.2d 600, 606 (1991). “When a motion to continue raises a

constitutional issue, the trial court’s ruling is fully reviewable on appeal.” Taylor,

354 N.C. at 33, 550 S.E.2d at 146 (citation omitted); see State v. Graham, 200 N.C.

App. 204, 214, 683 S.E.2d 437, 444 (2009) (“The standard of review for alleged

violations of constitutional rights is de novo.” (citation omitted)).

 On 24 October 2014, defendant’s counsel filed a notice of self-defense and

served it on the State. On 4 December 2014, defendant’s counsel sent an email to the

Assistant District Attorney handling the case indicating defendant’s counsel had

information regarding prior incidents of assaultive behavior involving Fogg. On 10

December 2014, the night before the trial was to start, the Assistant District Attorney

emailed defendant’s counsel some other reports involving Fogg, including some where

charges were not filed.

 17
 STATE V. BASS

 BRYANT, J., dissenting

 After receiving this information, defendant’s counsel moved for a continuance,

stating he needed additional time to “attempt to develop additional character

evidence of the victim . . . for aggressive violent behavior,” but admitted he had not

specifically requested information about uncharged, acquitted, or dismissed conduct.

The trial court denied the motion.

 The next day, defendant’s counsel asked to renew his motion on the ground

that defendant’s due process rights were being violated in that counsel was being

prevented from presenting a defense and he was providing ineffective assistance of

counsel. The trial court denied the motion.

 To prevail on a claim of ineffective assistance of counsel, a
 defendant must first show that his counsel’s performance
 was deficient and then that counsel’s deficient performance
 prejudiced his defense. . . . [T]o establish prejudice, a
 defendant must show that there is a reasonable probability
 that, but for counsel’s unprofessional errors, the result of
 the proceeding would have been different.

State v. Allen, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006) (internal citations

omitted).

 Here, defendant’s counsel did not neglect to move for a continuance; he did so,

but the trial court denied the motion. That the motion was denied is not indicative

that counsel’s performance was deficient; defendant’s counsel properly made the

motion, and he cannot be accused of providing ineffective assistance to his client on

this basis. Defendant’s argument to the contrary should be overruled.

 18
 STATE V. BASS

 BRYANT, J., dissenting

 With regard to defendant’s constitutional argument, which we review de novo,

see Graham, 200 N.C. App. at 214, 683 S.E.2d at 444, I would find no error in the trial

court’s denial of defendant’s motion to continue. Defendant’s counsel reported to the

trial court that defendant’s investigator was able to locate two witnesses from the list

provided to him by the State the night before trial, one of whom testified about his

opinion of Fogg’s violent and aggressive behavior as well as Fogg’s reputation in the

community for violence and aggression. In addition, two other witnesses testified for

defendant regarding Fogg’s reputation for violence and aggression. Here, where

defendant presented three witnesses to testify that Fogg was an aggressive and

violent individual and had such a reputation in the community, defendant was able

to properly present his claim of self-defense. Therefore, the trial court’s denial of his

motion to continue did not deprive him of his constitutional right to present a defense.

 In conclusion, for the reasons stated herein and as especially emphasized by

In re Civil Penalty, 324 N.C. at 384, 379 S.E.2d at 37, I am constrained to find no

error in the judgment of the trial court and therefore respectfully dissent.

 19